# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Regina Ogle,**

       **Plaintiff,**

v.                                                                                 Case No. 13-1096-JWL

**Carolyn W. Colvin,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Regina Ogle brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of defendant, the Commissioner of Social Security, to deny her applications for social security disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Act  According to plaintiff, the ALJ erred at step three when she concluded that plaintiff did not demonstrate an inability to ambulate effectively for purposes of Listing 1.02 and erred when she improperly discredited plaintiff's testimony regarding her inability to ambulate effectively.  Finding error as alleged by plaintiff in the ALJ's step three evaluation, the court orders that the Commissioner's decision is reversed and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

## I. Procedural Background

On July 21, 2010, plaintiff protectively filed an application for disability insurance benefits and for supplemental security income benefits, alleging disability beginning December 31, 2009. The applications were denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on February 9, 2012, at which both plaintiff and her attorney were present. On March 9, 2012, the ALJ rendered a decision in which she determined that plaintiff was not under a "disability" as defined by the Social Security Act from December 31, 2009 through the date of the decision.[1] Consequently, the ALJ denied all benefits to plaintiff. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of defendant.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards. *See Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)). The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson*, 602 F.3d at 1140). In the course of its review, the

---

[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.

court may not reweigh the evidence or substitute its judgment for that of defendant. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

**III.     Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings**

A "disability" for purposes of the Social Security Act requires both the "inability to engage in any substantial gainful activity" and "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bussell v. Astrue*, 463 Fed. Appx. 779, 781 (10th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)).  The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Wilson*, 602 F.3d at 1140 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B))).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled, *see id*. at 1139, and the ALJ in this case followed the five-step process.  If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Id.*  Step one requires the claimant to show that he or she is not presently engaged in substantial gainful activity. *Id*.  Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.  The second step of the evaluation

3

process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments" that significantly limits his or her ability to perform basic work activities. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). At this step, the ALJ concluded that plaintiff had several severe impairments, including asthma, panic disorder, depressive disorder, lumbar spondylosis, obesity, possible tarsal coalition, ankle valgus, bilateral osteoarthritis and patellar femoral dysfunction. The ALJ identified plaintiff's migraine headaches and hypertension as non-severe impairments. Thus, the ALJ proceeded to step three.

In step three, the ALJ determines whether the impairment "is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id*. If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment or combination of impairments prevents him from performing his [or her] past work." *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. Here, the ALJ specifically rejected plaintiff's argument that she met Listing 1.02 due to her inability to ambulate effectively. According to the ALJ, plaintiff's ability to ambulate with the use of a single cane, as opposed to a walker that requires the use of both hands, necessarily meant that she failed to meet the Listing.

At the fourth step, the ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform a hybrid of light and sedentary work as defined in 20 C.F.R. §§ 404.1567 and 416.967. Among other capabilities, the ALJ concluded that plaintiff could sit for 6 hours in an 8-hour workday and stand or walk for at least 2 hours in an 8-hour workday. The ALJ concluded that plaintiff would need the ability to alternate between sitting and standing at least every 30 minutes and would require a job that could be performed while using a handheld assistive device, which was required for prolonged ambulation and standing. The ALJ concluded, however, that plaintiff could stand for at least 30 minutes without the need for an assistive device. Based on evidence adduced from the vocational expert, the ALJ concluded that plaintiff, with the limitations established in plaintiff's RFC, could not perform her past relevant work as a cook or certified nurse's aide as the demands of those jobs would exceed plaintiff's residual functional capacity.

Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process– determining whether the claimant has the residual functional capacity "to perform work in the national economy, given her age, education, and work experience." *See id*. (quoting *Lax*, 489 F.3d at 1084). At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains a sufficient capacity to perform an alternative work activity and that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite her limitations, nonetheless could perform jobs that exist in significant numbers

in the national economy, such as a Semiconductor Bonder, Lens Inserter and Stringer Machine Tender.

## IV. The ALJ's Step Three Evaluation

In her motion, plaintiff contends that the ALJ erred at step three when she concluded that plaintiff did not demonstrate an inability to ambulate effectively for purposes of Listing 1.02.[2] At step three of her evaluation, the ALJ determined that plaintiff failed to meet Listing 1.02 because plaintiff failed to meet her burden to establish an inability to ambulate effectively. It is undisputed that an "inability to ambulate effectively" is one of the criteria of Listing 1.02. In pertinent part, the regulations define that phrase as follows:

> What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities .
> . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public

---

[2] Plaintiff further contends that the ALJ erred when she improperly discredited plaintiff's testimony regarding her inability to ambulate effectively. Because the court is remanding this case for additional proceedings at step three, the court need not address plaintiff argument that the ALJ erred in assessing her credibility.

6

> transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00B2b. Plaintiff contends that the ALJ's interpretation of the phrase "inability to ambulate effectively" was overly prohibitive because the ALJ focused exclusively on the fact that plaintiff did not require the use of a walker and concluded on that fact alone that plaintiff could not satisfy the listing. According to plaintiff, the use of an ambulatory device that preoccupies both hands is simply an example of an inability to ambulate effectively but is not required to satisfy the Listing.

Plaintiff's characterization of the ALJ's analysis on this issue is accurate—the ALJ expressly held that the pertinent listing "requires the use of handheld assistive device that limits the functioning of both of the claimant's upper extremities" and that plaintiff could not meet the Listing without the use of such a device. Significantly, the Commissioner does not argue that the ALJ correctly applied the regulations by requiring the use of a device that preoccupies both hands. Rather, the Commissioner launches directly into a discussion of the harmless error doctrine and, thus, evidently concedes that the ALJ erred at step three. In any event, the court agrees with plaintiff that the ALJ erred when she determined that plaintiff could not meet the Listing without the use of an assistive device that preoccupied both hands. *See Moss v. Astrue*, 555 F.3d 556, 562-63 (7th Cir. 2009) (claimant may show that he is unable to ambulate effectively if one or more of the examples in the regulation applies to him, even if he does not use an assistive device that limits the functioning of both upper extremities).

The court turns, then, to the Commissioner's argument that a reading of the ALJ's opinion as a whole alleviates any concern that plaintiff might have been adjudged disabled at step three, rendering any error at step three harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005). According to the Commissioner, the ALJ's factual findings at steps four and five support the conclusion that plaintiff did not establish an inability to ambulate effectively. The Commissioner points to the ALJ's findings that in August 2010 plaintiff did not require the use of a walker or a cane but utilized only a brace or splint; that plaintiff recovered well from her April 2010 surgery; that a November 2010 examination note indicated that plaintiff walked through the doctor's office and examination room without using an assistive device; that plaintiff received conservative treatment following her April 2010 surgery; and that plaintiff reported preparing daily meals, shopping and fishing. The Commissioner also relies heavily—as did the ALJ—on the assessment of Dr. Fanning, plaintiff's treating orthopedic surgeon, who opined in August 2010 that plaintiff could work so long as her duties did not require prolonged walking. Finally, the Commissioner highlights the ALJ's RFC assessment that plaintiff could walk for at least 30 minutes at a time without the need for an assistive device.

These findings are insufficient to alleviate "any concern" that plaintiff might have been adjudged disabled at step three. The ALJ's findings do not adequately consider whether plaintiff is capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. The findings do not consider whether plaintiff in fact meets the listing based on the provided examples such as an inability to walk a block at a reasonable pace on rough or uneven surfaces or the inability to carry out routine ambulatory activities. While plaintiff testified that she occasionally goes shopping, she testified that she

uses an electric cart at Wal-Mart and that her other shopping trips necessitate the use of a walker or cane and are limited in duration because of her impairment. Moreover, while the ALJ relied heavily on the assessment of Dr. Fanning, Dr. Fanning did not treat plaintiff after August 2010—approximately 18 months prior to the hearing in this case. The medical evidence suggests that plaintiff's condition worsened after that time—as evidenced by x-rays in June 2011 reflecting degenerative osteoarthritic changes to both of plaintiff's feet which the ALJ noted caused plaintiff "significant pain" and limited her ability to stand and walk. The ALJ even acknowledged that plaintiff's most recent treating podiatrist opined that plaintiff would be limited to walking "about five minutes" without an assistive device before she would be in significant pain. While the ALJ discounted that opinion as inconsistent with Dr. Fanning's assessment, the ALJ failed to consider that Dr. Fanning's last treatment of plaintiff occurred in 2010. As for the ALJ's conclusion that plaintiff could walk up to 30 minutes without the use of an assistive device, the court cannot conclude that substantial evidence supports that conclusion in light of the ALJ's failure to explain her nearly exclusive reliance on the assessment of Dr. Fanning without considering whether that assessment remained viable in light of more recent developments concerning plaintiff's feet. This is particularly true where plaintiff's treating podiatrist opined just days before the hearing that plaintiff could not walk more than 5 minutes without assistance. Thus, because the ALJ's findings do not conclusively negate the possibility that plaintiff can meet Listing 1.02 at step three such that "no reasonable factfinder could conclude otherwise," the ALJ's error at step three is not harmless. *Murdock v. Astrue*, 458 Fed. Appx. 702, 705 (10th Cir. 2012).

In sum, finding error as alleged by plaintiff in the ALJ's step three evaluation, the court orders that the Commissioner's decision is reversed and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision is reversed and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) remanding this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated this 13 day of February, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
